## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARY SHIMP,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:18-cv-2872 (CRC)** |
| | ) | |
| **ORACLE AMERICA, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## JOINT STATEMENT REGARDING DISCOVERY DISPUTES

Pursuant to this Court's Orders entered October 16, 2019 and October 21, 2019, the parties hereby provide the following Joint Statement regarding the discovery disputes:

## PLAINTIFF'S POSITION

### A.  **Mr. Weiler's Deposition and related documents**

Oracle has taken the position that it conducted RIFs in 2017 that are relevant to Plaintiff's termination, despite clear testimony from Oracle's Vice President of HR that Plaintiff was a "single job elimination" and not subject to any RIF. J. Olson Dep. (Attached as **Exhibit 1**) at 71. In accordance with its position, Oracle has produced numerous documents relating to these RIFs.

During the relevant time period, Bob Weiler – then the Executive Vice President of Oracle's Global Business Units – was leading the division of Oracle of which Plaintiff was a part.  Oracle's discovery production conveys that Mr. Weiler was providing direction to Alec Glorieux regarding the need, and extent of such need, for RIFs in Mr. Glorieux's division, of which Plaintiff was employed.

On September 27, 2019, Jennifer Olson, a VP with HR, was deposed.  During her deposition she stated that Mr. Weiler had personally made comments, that "he didn't understand why we couldn't RIF faster and why we were constrained by age", *id.* at 119, and was hoping to

"reduce costs faster" *id.* at 121, during the relevant timeframe.  Ms. Olson also stated in her deposition that she escalated these comments by Mr. Weiler to her boss and then her boss's boss, *id.* at 124-26, and prepared a special presentation in response to his comments to be given to Mr. Hurd, the CEO, *id.* at 121.

Immediately upon learning about these comments by Mr. Weiler, counsel for Plaintiff requested all documents reflecting Mr. Weiler's comments so that she could make an informed decision as to whether there was a need to depose him.  Given his high-ranking position with Oracle, this was the responsible and appropriate path.  Over the next few weeks, Oracle counsel slow-walked its response to these document requests, neither agreeing nor refusing to produce them.  On October 15, 2019, still with no response from Oracle counsel and concerned that the requested documents would not be provided in time to make an informed decision about the need to depose him, Plaintiff noticed Mr. Weiler's deposition.  At 9:30 pm that night, Oracle counsel informed Plaintiff's counsel that Mr. Weiler was no longer an Oracle employee.

At no prior point did Oracle counsel indicate that Mr. Weiler was no longer an employee at Oracle.  Indeed, during the deposition of Ms. Olson when this issue first arose, counsel for Oracle and Ms. Olson both referred to Mr. Weiler as a current employee. J. Olson Dep, at 293 ("Bob Weiler **is** a huge figure at Oracle" (Attorney Kewer)); 54, (regarding the definition of GBU's, "Correct. The ones either under Bob Weiler or Mike Sicilia" (Olson)).  Accordingly, Plaintiff should be allowed to depose Mr. Weiler out of time via a subpoena, given that his relevance as a witness was only recently made clear and given Oracle's statements that conveyed that he was still at the Company.  Moreover, the requested documents are clearly relevant and responsive to earlier requests for RIF-related documents and, as such, should be produced.

B. **Second Set of Requests for Production**

On September 20, 2019, Plaintiff timely served her Second Set of Requests for Production on Oracle.  Plaintiff's position is that documents sought related to Oracle's finances are relevant to punitive damages and thus should be produced.[1]  *Hutchinson v. Stuckey*, 952 F.2d 1418, 1423 n. 4 (D.C.Cir.1992).  Plaintiff's requests were crafted to encompass basic financial documents already within the possession of Oracle that could be easily produced.  Defendant acknowledges that financial information is relevant to punitive damages, but argues it should not have to produce such documents as Plaintiff's damages are capped at $300,000.  But the cap on Plaintiff's damages does not change the relevance of these documents, especially as a jury may not appreciate Oracle's ability to satisfy a punitive damages award.  Regardless, Plaintiff is willing to withdraw its request for these documents if Oracle is willing to stipulate that Plaintiff is entitled to $300,000 in punitive damages in the event of an award.

Plaintiff's position is that Oracle's EEO-1 statements for the relevant period are relevant and not privileged.  *See*, *e.g.*, *McDougal-Wilson v. Goodyear Tire & Rubber Co.*, 232 F.R.D. 246, 249 (E.D.N.C. 2005) (EEO-1 statement subject to production as relevant and non-privileged).  Plaintiff understands that Oracle's EEO-1 statements provide a breakdown of positions/roles within the Company by gender – information clearly relevant to a suit based, in part, on allegations that Plaintiff was terminated after, 6 weeks earlier, she was essentially replaced by a male employee and subjected to a disparaging and meritless gender stereotype that she did not have the analytical capacity to handle certain work.  Plaintiff understands that, per Defendant, the EEO-1 Statements need not be produced because they cover the whole company rather than just the division where Plaintiff worked.  This borders on the nonsensical.  Personnel

---

[1] While courts uniformly find defendant's financial status relevant to punitive damages, admittedly, some courts in this district have held that discovery concerning a defendant's financial status need not be produced until it is necessary to prove up punitive damages.  *D'Onofrio v. SFX Sports Grp., Inc.*, 247 F.R.D. 43, 52 (D.D.C. 2008).

policies also govern the entire company, but no one would suggest that they are, as a result, somehow not relevant.  Whether Oracle relegates women to certain roles or fails to retain them within its organization – and not just within a single division – is self evidently relevant to this case.

Plaintiff's position is that Oracle's Affirmative Action Plan (AAP) related to gender is relevant and non-privileged.  *Martin v. Potomac Elec. Power Co.*, 1990 WL 158787 (D.D.C. 1990) (AAP subject to production as relevant and non-privileged). Any AAP addressing gender is relevant as to whether Oracle followed and/or met its own obligations when it terminated Plaintiff instead of her male comparator.  Certainly, a failure to abide by its own internal policies is relevant to whether any non-discriminatory reason to terminate Plaintiff is, in fact, pretextual. Further, Oracle's failure to adhere to its own policies can be evidence of malice sufficient to support punitive damages.  Plaintiff understands that, per Defendant, Oracle's AAP is not relevant because it covers the entire company, rather than just the division where Plaintiff worked.  Again, the scope of the AAP does not go to its relevance.

## DEFENDANT'S POSITION

### A.    Mr. Weiler's Deposition and Related Documents

The first dispute arises from testimony of Oracle's Vice President of Human Resources, Jennifer Olson during her deposition on September 27, 2019.  Ms. Olson was questioned about a PowerPoint presentation she prepared for a meeting in April 2017.  In response, Ms. Olson testified that Bob Weiler, then-Executive Vice President of (Oracle's Global Business Units, had a meeting with Mark Hurd, Oracle's Co-Chief Executive Officer, and "in the context of that meeting [Mr. Weiler] made some comments about he didn't understand why we couldn't RIF faster and why we were constrained on age." *See* Olson Deposition (Attached as **Exhibit A**) at 119:5-20.  Ms. Olson testified she was not present for the conversation but learned of it "either

via email from Jennifer [Birk, Mr. Weiler's operations leader] or verbally from Bob Weiler." *Id.* at 120:2-6. Ms. Olson subsequently prepared a presentation for a meeting with Mr. Hurd "to ensure understanding of [Oracle's] overall process and how we were moving through it." *Id.* at 126:1-6, 131:17-21. Plaintiff now seeks any documents reflecting discussions regarding Mr. Weiler's comments including, but not limited to, emails between Ms. Birk and Ms. Olson. Plaintiff also seeks to depose Bob Weiler after the close of discovery.[2] Oracle opposes both requests.

Ms. Weiler's comments that "he didn't understand why we couldn't RIF faster and why we were constrained on age" reflect a lack of understanding of the legal process associated with reductions in force. They are not indicative of a broader discriminatory motive, and, more importantly, had no bearing on Plaintiff's termination of employment which occurred 6 months later. While Plaintiff was terminated in connection with the budget cuts and reduction in force in the fall of 2017, her termination was processed as an individual position elimination and she was not part of a larger decisional unit.[3] Mr. Weiler's only attenuated relation to Plaintiff's termination of employment is that he was involved in developing budget numbers, which necessitated reductions across the various Global Business Units (*i.e.*, departments). He was not involved in selecting or approving Plaintiff for termination. In sum, this is a single plaintiff disparate treatment case, and Mr. Weiler's comments about age are simply irrelevant (especially given that this is a gender, not age, case).

Plaintiff has known of Mr. Weiler's existence throughout discovery and expressed no desire to depose him. She learned of the comment at issue during Ms. Olson's deposition and still expressed no desire to depose him. Plaintiff first notified Oracle that she wanted to depose

---

[2] Mr. Weiler is no longer employed with Oracle.
[3] Plaintiff has repeatedly emphasized this fact during the depositions of various Oracle employees.

Mr. Weiler on October 16, 2019, when she issued a Notice of Deposition for the same date and time as her own deposition (October 21, 2019) that had been noticed on September 26, 2019. Plaintiff's arguments in support of her request to depose Mr. Weiler that she did not know of his employment status with Oracle, are immaterial because his testimony is of no import to this case and allowing his deposition after the close of discovery is unwarranted.

Plaintiff has no justification for waiting nearly three weeks after learning of Mr. Weiler's comment before seeking to depose him on the last day before discovery closes during her own deposition. "If the moving party was not diligent, the inquiry of good cause should end." *Rude v. Adeboyeku*, 2007 WL 9770927, at *1 (D.D.C. Aug. 31, 2007) (internal citations omitted); *see also Dag Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005) ("Courts in this District have routinely denied requests for discovery beyond a cut-off date where a party has shown a lack of diligence during the allowed time period").

Following Ms. Olsen's deposition testimony that she learned of Mr. Weiler's comments either from him or Jennifer Birk, counsel for Plaintiff requested Oracle produce the email from Ms. Birk to Ms. Olsen. That document (ORACLE 9182-83) was produced by Oracle on August 23, 2019 and was included in Oracle's privilege log.[4]   Plaintiff's request for additional documents reflecting discussions regarding Mr. Weiler's comments is unreasonable both because the relevance of such documents is highly questionable and requiring Oracle to run an additional document search and review is not proportional to the needs of this case.

Oracle has already searched extensively for documents in response to Plaintiff's 52 requests for production of documents.  In response to Plaintiff's exceedingly broad requests,

---

[4] After Plaintiff requested the document, counsel for Oracle located the document, noted its privilege, and indicated that it would produce a privilege log for the document.  Counsel subsequently determined that the document had already been produced and promptly notified Plaintiff's counsel on October 18, 2019.

Oracle imaged the mailboxes of ten custodians (including Ms. Olson and Mr. Weiler), resulting in nearly 706,000 files.    This process took months and was a primary reason for the original joint request that this Court extend discovery until the current deadline of October 22, 2017.

Plaintiff's request for these documents would require Oracle to run additional, broad searches across the almost 706,000 files and review potentially thousands of additional documents to determine whether any responsive documents exist.  This process likely would take weeks for Oracle to review all of the documents to determine whether any are responsive to this inquiry.

The burden this would impose on Oracle far outweighs any benefit to Plaintiff and is not proportional to the needs of the case. The purpose of the 2015 amendment to Rule 26 was "to emphasize the need for proportionality in discovery and to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse.'" *Prasad v. George Washington Univ.*, 323 F.R.D. 88, 91 (D.D.C. 2017) (internal citations omitted).

### B.      Plaintiff's Second Set of Requests for Production

The second dispute concerns Plaintiff's Second Set of Requests for Production that were served September 23, 2019, just 30 days prior to the close of discovery.  In those requests, Plaintiff seeks: (1) Defendant's current net worth as certified by a true by a public accountant; (2) Defendant's 2019 U.S. and state tax returns; (3) Defendant's most recent annual and quarterly report filed with the SEC; (4) Defendant's EEO-1 Statements from 2015-2018; (5) any Affirmative Action Plan relating to women and/or gender from 2015-Plaintiff's termination; and (6) any documents reflecting Defendant's efforts to comply with any Affirmative Action Plan relating to women and/or gender from 2015-Plaintiff's termination. Oracle objects to all six requests and stands on its objections. *See* **Exhibit B** for Oracles' Objections and Responses to Plaintiff's Second Requests for Production.

Requests Nos. 1-3 have no bearing on Plaintiff's claim for gender discrimination. However, to the extent that any of the requested financial information is discoverable, such information is publicly available on Oracle's website.[5] The only requested documents not publicly available are Oracle's 2019 federal and state tax returns; however, the financial information contained therein is available on Oracle's website. Accordingly, Oracle should not be required to respond to that request under Fed. R. Civ. P. 26(b)(2)(C)(i).[6] Further, "federal courts generally resist discovery of tax returns." *See E.E.O.C. v. Ceridian Corp.*, 610 F. Supp. 2d 995, 996 (D. Minn. 2008); *see also United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 142 F. Supp. 3d 37, 47 (D.D.C. 2015), *aff'd sub nom.* 234 F. Supp. 3d 115 (D.D.C. 2017).

Similarly, Plaintiff's Requests Nos. 4-6 that relate to Oracle's Affirmative Action Plan and EEO-1 Statements are outside the permissible scope of discovery pursuant to Federal Rule of Civil Procedure 26 as they seek documents that are not relevant to Plaintiff's claims and are disproportionate to the needs of the case. This is a single plaintiff disparate treatment case and not a disparate impact case. Additionally, Plaintiff seeks workforce information for a four-year period (2015 – 2018) for over a thousand employees in Oracle's Reston Office. These requests are facially overbroad and unduly burdensome and Oracle should not be compelled to respond to them.

Additionally, the requests are overbroad in that they encompass the time period prior to Oracle hiring the alleged comparator, Charles McDonald, in the summer of 2017 and include employees not under the supervision of the ultimate decision-maker in this case, Alec Glorieux.

---

[5] Oracle's website includes quarterly and annual reports, and all SEC filings including but not limited to forms 8-K and 10-Q that contain Oracle's quarterly and annual revenue, net income, and losses. Available at https://investor.oracle.com/overview/highlights/default.aspx.

[6] Pursuant to Federal Rule of Civil Procedure 26(b)(2)(C), the Court must limit the frequency or extent of discovery otherwise allowable if it determines "the discovery sought…can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C).

*See, e.g., Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 621 (6th Cir. 2006) (For a reduction in force analysis "the relevant group must include…all of the positions slated for elimination that were reviewed by the same decisionmaker(s)"); *see also Mann v. Washington Metro. Area Transit Auth. (WMATA)*, 168 F. Supp. 3d 71, 86 (D.D.C. 2016), *aff'd sub nom. Mann v. Washington Metro. Area Transit Auth.*, 692 F. App'x 6 (D.C. Cir. 2017) (finding a plaintiff's proposed comparator was not similarly situated to plaintiff in part because the comparator was not subject to the same decision-maker). For the reasons set forth above, the Court should deny a request to compel Oracle to respond to Plaintiff's Second Set of Requests for Production because they are overbroad, not relevant or proportional to the needs of the case and were available through more convenient and less intrusive means when discovery was open.

Dated:  October 23, 2019

Respectfully submitted,

| | |
|---|---|
| ___/s/  Debra Soltis_____ | ___/s/  Steven W. Ray_____ |
| Debra Soltis, Esq. | Steven W. Ray, Esq. |
| D.C. Bar No. 435715 | D.C. Bar No. 416740 |
| Paul Kiyonaga | Amy E. Smith, Esq. |
| D.C. Bar No. 428624 | D.C. Bar No. 1021672 |
| Marcus T. Massey | Alison D. Kewer, Esq. |
| D.C. Bar No. 1012426 | Admitted *Pro Hac Vice* |
| Kiyonaga & Soltis, P.C. | Isler Dare, P.C. |
| 910 17th St., NW, Suite 800 | 1945 Old Gallows Road, Suite 650 |
| Washington, DC 20006 | Vienna, Virginia 22182 |
| Phone: (202) 363-2776 | Phone: (703) 748-2690 |
| dsoltis@kiyosol.com | sray@islerdare.com |
| *Counsel for Mary Shimp* | *Counsel for Oracle America, Inc.* |